1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                          EUREKA DIVISION

7

8    ROBERT FRANCIS LESTER,                 Case No. 15-cv-00738-NJV

          Plaintiff,
9
                                            **ORDER ON MOTIONS FOR**
10        v.                                **SUMMARY JUDGMENT**

11   CAROLYN W. COLVIN,                      Re: Dkt. Nos. 21 & 22

          Defendant.
12

13

14                            **INTRODUCTION**

15         Plaintiff, Robert Francis Lester, seeks judicial review of an administrative law judge

16   ("ALJ") decision denying his application for disability benefits under Titles II and XVI of the

17   Social Security Act.  Plaintiff's request for review of the ALJ's unfavorable decision was denied

18   by the Appeals Council.  The decision thus is the "final decision" of the Commissioner of Social

19   Security, which this court may review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Both parties have

20   consented to the jurisdiction of a magistrate judge.  (Docs. 6 & 7).  For the reasons stated below,

21   the court will deny Plaintiff's motion for summary judgment and grant Defendant's Cross-Motion

22   for Summary Judgment.

23                          **LEGAL STANDARDS**

24         The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

25   conclusive."  42 U.S.C. § 405(g).  A district court has a limited scope of review and can only set

26   aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

27   error.  *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Substantial

28   evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

United States District Court
Northern District of California

1    as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108

2    F.3d 978, 979 (9th Cir. 1997).  "In determining whether the Commissioner's findings are

3    supported by substantial evidence," a district court must review the administrative record as a

4    whole, considering "both the evidence that supports and the evidence that detracts from the

5    Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  The

6    Commissioner's conclusion is upheld where evidence is susceptible to more than one rational

7    interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

8    **THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

9    A person filing a claim for social security disability benefits ("the claimant") must show

10   that she has the "inability to do any substantial gainful activity by reason of any medically

11   determinable physical or mental impairment" which has lasted or is expected to last for twelve or

12   more months.  20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.  The ALJ must consider all evidence in the

13   claimant's case record to determine disability (*Id*. § 416.920(a)(3)), and must use a five-step

14   sequential evaluation to determine whether the claimant is disabled (*Id*. § 416.920).  "[T]he ALJ

15   has a special duty to fully and fairly develop the record and to assure that the claimant's interests

16   are considered."  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

17   Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step

18   sequential evaluation.  AR. 17-29.

19   At Step One, the claimant bears the burden of showing he has not been engaged in

20   "substantial gainful activity" since the alleged date the claimant became disabled.  20 C.F.R. §

21   416.920(b).  If the claimant has worked and the work is found to be substantial gainful activity,

22   the claimant will be found not disabled.  *Id*.  The ALJ found that Plaintiff had not engaged in

23   substantial gainful activity since his alleged onset date.  AR. 19.

24   At Step Two, the claimant bears the burden of showing that he has a medically severe

25   impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii), (c).  "An impairment is

26   not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

27   more than a minimal effect on the ability to do basic work activities.'"  *Webb v. Barnhart*, 433

28   F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).  The ALJ found that Plaintiff

United States District Court
Northern District of California

2

1    suffered the following severe impairments:  schizophrenia and mood disorder.  AR. 19.

2           At Step Three, the ALJ compares the claimant's impairments to the impairments listed in

3    appendix 1 to subpart P of part 404.  *See* 20 C.F.R. § 416.920(a)(4)(iii), (d).  The claimant bears

4    the burden of showing her impairments meet or equal an impairment in the listing.  *Id*.  If the

5    claimant is successful, a disability is presumed and benefits are awarded.  *Id*.  If the claimant is

6    unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds

7    to Step Four.  *Id*. § 416.920(a)(4)(iv), (e).  Here, the ALJ found that Plaintiff did not have an

8    impairment or combination of impairments that met or medically equaled one of the listed

9    impairments.  AR. 20.  Next, the ALJ determined that Plaintiff retained the RFC "to perform

10   simple repetitive tasks equating to unskilled work."  AR. 22.

11          At Step Four, and pursuant 20 C.F.R. 416.965, the ALJ determined that Plaintiff could

12   perform his past relevant work as a busser.  AR. 27-18.

13          Despite that determination, the ALJ continued to Step Five as an alternative ruling and

14   found that considering Plaintiff's age, education, work experience, and RFC, and after consulting

15   the Medical-Vocational Guidelines, that "there are jobs that exist in significant numbers in the

16   national economy" that Plaintiff can perform.  AR. 28.  Accordingly, the ALJ determined that

17   Plaintiff had "not been under a disability, as defined in the Social Security Act" at any time from

18   the alleged onset date through the date of the decision.  *Id*.

19                              **SUMMARY OF RELEVANT MEDICAL EVIDECNE**

20          On June 5, 2012, Plaintiff presented for an initial psychiatric evaluation.  AR. 285.

21   Plaintiff appeared to have delusions regarding connections between himself and items in the

22   media, such as the MSNBC logo.  *Id*.  He also believed that he had connections with celebrities

23   like Arnold Schwarzenegger and George W. Bush.  *Id*.  He had no prior psychiatric treatment

24   other than for AHDH as a child.  AR. 286.  Plaintiff informed David Villasenor, M.D., that he

25   experienced auditory hallucinations.  AR. 287.  Dr. Villasenor diagnosed Plaintiff with

26   schizophrenia and prescribed Risperdal.  AR. 288.

27          On June 22, 2012, Plaintiff presented to Dr. Villasenor for medication management.  AR.

28   339.  Dr. Villasenor noted that Plaintiff suffered no hallucinations but had some delusional

thinking.  AR. 340.  At a follow up appointment Dr. Villasenor noted that Plaintiff had improved while on medication and did not exhibit delusions, hallucinations, or paranoia.  AR. 338.  On September 5, 2012, Dr. Villasenor noted that Plaintiff was well groomed and properly oriented, exhibited no hallucinations and fewer delusions.  AR. 335.

On September 22, 2012, Plaintiff presented to Paul Butler, M.D. for a psychological consultative examination.  AR. 314-318.  Dr. Butler opined that Plaintiff would be able to perform both simple and complex tasks, have no difficulty accepting instruction or interacting with others, and perform routine work activities with minimal disturbance from his mental impairments.  AR. 317.

On October 10, 2012, Dr. Villasenor noted that Plaintiff was doing well on medication and no longer researched celebrities online.  AR. 386.  Dr. Villasenor performed a mental evaluation and noted no hallucinations, delusions, or paranoia.  *Id*.

On December 5, 2012, Plaintiff informed Dr. Villasenor that his symptoms were improving and that he did not experience any side effects from his medication.  AR. 377-78.  Upon examination, Dr. Villasenor noted that Plaintiff exhibited normal grooming, orientation, and speech and exhibited no hallucinations, delusions, or paranoia.  AR. 378.

On February 6, 2013, Plaintiff presented to Dr. Villasenor for a follow up examination.  AR. 367.  Dr. Villasenor noted that Plaintiff appeared well groomed and exhibited no hallucinations, delusions or paranoia.  AR. 368.  On May 8, 2013, Dr. Villasenor examined Plaitnff and again noted that Plaintiff did not experience hallucinations or delusions.  AR 356.

On October 16, 2013, Plaintiff reported that he talked in a sing song manner less frequently, which pleased his parents.  AR. 434.  He also reported that someone had recently broken into his home, and in response, Plaintiff calmly escorted the person out of the home and called the police.  *Id*.  He reported no hallucinations.  *Id*.  Dr. Villasenor performed a mental evaluation and noted no hallucinations, delusions, or paranoia.  AR. 435.  Similarly, on November 20, 2013, Dr. Villasenor performed a mental evaluation and noted no hallucinations, delusions, or paranoia.  AR. 428.  On January 15, 2014, again Dr. Villasenor noted that Plaintiff was stable on his medication and exhibited no hallucinations, delusions, or paranoia.  AR. 486.

United States District Court
Northern District of California

1      Ahmed El-Sokkary, Psy.D., a clinical psychologist, examined Plaintiff on March 20, 2014.

2   AR. 473-76.  Dr. El-Sokkary opined that Plaintiff would be able to perform basic work, but could

3   not perform complex work and that Plaintiff would have no more than mild difficulty interacting

4   with the public and co-workers.  AR. 471.

5      On May 21, 2014, Dr. Villasenor noted that Plaintiff had resolved his issues with

6   hallucinations, cognitive changes, and delusions of special powers.  AR. 480-81.

7                                    **ISSUES PRESENTED**

8      Plaintiff presents two issues for this court's review:  (1) whether the "ALJ committed

9   harmful legal error by failing to properly evaluate lay testimony;" and (2) whether "ALJ

10   committed harmful legal error by failing to include all limitations in the residual functional

11   capacity (RFC)."  Pl.'s Mot. (Doc. 21) at 5 & 7.

12                             ***A.        The Lay Testimony***

13      Plaintiff asserts that "[t]he ALJ committed legal error by failing to properly evaluate lay

14   testimony."  Pl.'s Mot. (Doc. 21) at 5.  Plaintiff argues that "ALJ's limited discussion [of the lay

15   witness testimony of Erin Lester, Sheila Lester, and Scott Lester] is deficient because it does not

16   state reasons to discount the testimony which is germane to each lay witness."  *Id*. at 7.

17      "The ALJ must consider competent lay testimony but in rejecting such evidence, he need

18   only provide reasons for doing so that are 'germane to [the] witness.'"  *Carmickle v. Comm'r, Soc.*

19   *Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Greger v. Barnhart*, 464 F.3d 968, 972

20   (9th Cir. 2006).  In discounting the testimony of the lay witnesses in the present case, the ALJ

21   stated:

22         Regarding third party allegations, I find credible the reports or testimony of Erin
           Lester, Sheila Lester, and Scott Lester, (Exh. 5E; Exh. 17E; Hearing Testimony-
23         February 10,2014; Hearing Testimony- July 23,2014), only to the extent consistent
           with the residual functional capacity finding for the same reasons upon which the
24         claimant's subjective allegations are discounted.

25   AR. 26.  Thus, this is not a case where the ALJ was silent as to the lay witness testimony.  Instead,

26   the ALJ provided a basis for his rejection of the testimony: "for the same reasons upon which the

27   claimant's subjective allegations were discounted."  AR. 26.  "[W]hen an ALJ provides clear and

28   convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the

United States District Court
Northern District of California

5

lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)). Plaintiff does not challenge the ALJ's rejection of his own subjective complaints. Thus, the ALJ did provide germane reasons for the rejection of the lay witness testimony and the court finds no error.

Moreover, even were the court to find the ALJ's rejection of the lay witness testimony to be error, "[b]ecause the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [Plaintiff's] testimony, [the court is] confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination. Accordingly, the ALJ's error was harmless." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

## B. The limitations in the RFC

First, Plaintiff argues that the ALJ erred in failing to include all of the limitations expressed by consultative examiner El-Sokkary, Ph.D. in the RFC, despite giving his opinion "substantial weight." Pl.'s Mot. (Doc. 21) at 7. Plaintiff points to Dr. El-Sokkary's opinions that "[c]laimant may have some difficulty from time to time in keeping a regular workday/workweek schedule without some brief intermittent interruptions from psychiatric symptoms" . . . and that "[c]laimant was able to maintain a sufficient level of concentration, persistence, and pace to do basic work in an environment that health condition would allow." *Id.* (citing AR. 476).

"It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" *Calkosz v. Colvin*, No. C-13-1624 EMC, 2014 WL 851911, at *5 (N.D. Cal. Feb. 28, 2014) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)). The ALJ discussed Dr. El-Sokkary's opinion in detail. As to Dr. El-Sokkary's discussion of Plaintiff's psychiatric symptoms, the ALJ countered that "the claimant's reported delusions [are] largely resolved with psychiatric treatment." AR. 26. Thus, the ALJ accounted for the opinion and explained how he took that opinion into account in formulating the RFC. The medical evidence of record, as outlined above, supports the ALJ's finding that Plaintiff's reported

delusions were largely resolved with treatment.  Dr. El-Sokkary's medical source statement is based on an exam from March of 2014.  The medical records from late June 2012 through 2014, show that treatment had abated Plaintiff's complaints of hallucinations and delusions, culminating in Dr. Villasenor's opinion in May 21, 2014, that Plaintiff had resolved his issues with hallucinations.  Thus, the court finds no error in the ALJ's consideration of Dr. El-Sokkary's opinion.

Plaintiff also argues that the ALJ should have required Dr. El-Sokkary to explain what he meant when he opined that Plaintiff could perform basic work in "an environment that health condition would allow."  The court finds this argument to be without merit.  An environment that Plaintiff's "health conditions would allow" is the work environment and limitations described by Dr. El-Sokkary in the medical source statement.

Second, Plaintiff argues that the ALJ erred by rejecting the Medical Source Statement created by Dr. Villasenor, a treating therapist and Ms. McNeill, a counselor.  Plaintiff states that the rejection of the medical source statement was "done by cataloguing the symptoms presented by the claimant and weighing them as if they were of equal importance.  For example, delusions are frequently mentioned as symptoms, but are negated by other positive factors such as good grooming or normal psychomotor activity. (AR 24-26)  These are hardly equivalent."  Pl.'s Mot. (Doc. 21) at 8.

The ALJ rejected the opinion expressed in the medical source statement that Plaintiff would have various work-preclusive functional limitations and Dr. Villasenor's separate opinion that Plaintiff "would have great difficulty maintaining employment."  AR. 27.  The reasons set forth by the ALJ for the rejection of the opinion were because: (1) "neither Dr. Villasenor nor Ms. McNeill provided any explanations to substantiate their conclusions involving the claimant's functional limitations"; (2) their determination "lacks support from their generally unremarkable findings on mental status examination"; (3) their opinion "cannot be reconciled with their progress notes"; and (4) "the opinions are inconsistent with the remainder of the medical evidence."  AR. 27.

Generally, the opinion of a treating physician is afforded great weight.  *See Magallanes v.*

United States District Court
Northern District of California

1   *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  However, "the ALJ may disregard the opinion of the

2   treating physician only if he sets forth 'specific and legitimate reasons supported by substantial

3   evidence in the record for doing so.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)

4   (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  "The ALJ rejected [Dr. Villasenor's]

5   opinion because it was unsupported by rationale or treatment notes, and offered no objective

6   medical findings to support the existence of [Plaintiff's] alleged conditions." *Id.* at 1149.  As

7   stated above, the substantial evidence of record shows that most of Plaintiff's mental symptoms,

8   which served as the basis for the limitations expressed in the medical source statement, were

9   resolved with treatment.  Thus, the court finds no error in the ALJ's rejection of the medical

10  source statement.

11      Finally, Plaintiff takes issue with the ALJ's reliance on Social Security Ruling 85-15 in

12  making his determination.  At Step 4 the ALJ found that Plaintiff could perform his past relevant

13  work as a busser.  In addition, in making an alternative determination, the ALJ continued to Step 5

14  and held that "even if the claimant could not perform any past relevant work, Section 204.00 of

15  the Medical-Vocational Guidelines and SSR 85-15 support a finding of 'not disabled.'"  AR. 28.

16  Plaintiff's attack on the ALJ's application of SSR 85-15 is only an attack on the ALJ's alternate

17  ruling.  The ALJ had no obligation to advance to Step 5 of the sequential process.

18      Moreover, Plaintiff's attack of the ALJ's use of that section is based on "substantial

19  evidence, especially from the family members cited above, that Lester would not be able to meet

20  [the demands of an unskilled occupation base]."  Pl.'s Mot. (Doc. 21) at 9.  As stated above, the

21  court found no error with the ALJ's rejection of this lay witness testimony and Plaintiff fails to

22  point to what other "substantial evidence" undermines the ALJ's decision.  Accordingly, the court

23  finds no error.

### CONCLUSION

24  For the above stated reasons it is ORDERED that the Motion for Summary Judgment

25  (Doc. 21) is DENIED and Defendant's Cross-Motion for Summary Judgment (Doc. 22) is

26  GRANTED.

27  A separate judgment shall issue.

28

United States District Court
Northern District of California

1       **IT IS SO ORDERED**.

2    Dated: March 15, 2016

3

4                               NANDOR J. VADAS
                                  United States Magistrate Judge

United States District Court
Northern District of California